IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID D. RICHARDSON,

                    Plaintiff,

          v.

UNITED STATES OF AMERICA and
HILLARY BOLLMAN,

                    Defendants.

CIVIL ACTION
NO. 23-CV-2015

## OPINION

**Slomsky, J.**                                                      **August 5, 2024**

**I.    INTRODUCTION** .................................................................................................. 3

**II.   BACKGROUND** .................................................................................................. 4

**III.  STANDARD OF REVIEW** ................................................................................ 5

  A.   Federal Rules of Civil Procedure Rule 12(b)(1) ............................................. 6

  B.   Federal Rules of Civil Procedure Rule 12(b)(6) ............................................. 6

  C.   Federal Rule of Civil Procedure 12(b)(5) ....................................................... 7

**IV.   ANALYSIS** ......................................................................................................... 8

  A.   Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ........... 9

  B.   Defendant United States' Motion to Dismiss for Failure to State a Claim ....... 11

    1.   Negligent Infliction of Emotional Distress .................................................. 11

      i.   Contractual or Fiduciary Duty ................................................................. 13

      ii.  Physical Impact ........................................................................................ 16

2.    Medical Malpractice ........................................................................................ 17

3.    Leave to Amend ............................................................................................... 21

C.    Defendants' Motion to Dismiss for Insufficient Service of Process ................................. 22

**V.    CONCLUSION** ............................................................................................. 24

## I.   INTRODUCTION

On May 22, 2023, pro se Plaintiff David D. Richardson ("Plaintiff" or "Richardson") initiated this case against Defendants United States of America ("United States") and Dr. Hillary Bollman, alleging that Dr. Bollman threatened Plaintiff when he was a patient at the Veteran's Affairs ("VA") Medical Center in Philadelphia Pennsylvania, which resulted in his pain and suffering.  (Doc. No. 1 at 3.)  In the months following the filing of the first Complaint, Richardson filed three Amended Complaints (Doc. Nos. 4, 9, 10), to which the Government responded with a Motion to Dismiss on September 27, 2023 (Doc. No. 17).  On October 13, 2023, Richardson filed a Fourth Amended Complaint (Doc. No. 20), and a filing titled "Memorandum and Law in Support of Complaint as Amended" (Doc. No. 23).  In this Memorandum, he alleged that he was entitled to file the Fourth Amended Complaint because he had withdrawn his previously filed Amended Complaints.  (See id. at 1.)  On November 20, 2023, the Government filed a second Motion to Dismiss (Doc. No. 43), seeking the dismissal of the Fourth Amended Complaint (Doc. No. 20).

On November 21, 2023, the Court held a hearing on the open Motions and deemed the Fourth Amended Complaint (Doc. No. 20) the operative Complaint in this case.  The Court also granted Plaintiff Richardson additional time to respond to Defendants' second Motion to Dismiss (Doc. No. 43).  (Doc. No. 46.)  On December 8, 2023, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss (Doc. No. 55) and on January 2, 2024, Defendant filed a Reply (Doc. No. 61).  As a result of these filings, Defendant's Motion to Dismiss (Doc. No. 43) is now ripe for disposition.  For reasons discussed below, the Motion (Doc. No. 43) will be granted, and Plaintiff's Fourth Amended Complaint (Doc. No. 20) will be dismissed with prejudice.

## II.    BACKGROUND

The following facts, as alleged in Plaintiff's Fourth Amended Complaint, are viewed in the light most favorable to Plaintiff.[1]  On January 20, 2023, Plaintiff was admitted to the VA Medical Center in Philadelphia, Pennsylvania.  (Doc. No. 20 at 5.)  The next day, he was visited by Defendant Dr. Hillary Bollman ("Dr. Bollman").  (Id.)  During this visit, Dr. Bollman allegedly told Plaintiff that if he "did not accept the help that the defendant was offering, the defendant would discharge the plaintiff to the streets and let the plaintiff fend for himself."  (Id.)  Plaintiff states that because he was "wheel-chair-bound and homeless," this statement upset him.  (See id.)  Specifically, he alleges that the interaction caused him "shock, anxiety, depression, loss of sleep, nightmares and tightening of the muscles in [his] neck, bac[k] and stomach."  (Id. at 7.)  He states that these injuries "were continuous and lasted for several days per episode at the thought of the [Dr. Bollman] carrying out said statement."  (Id.)  He later complained about Dr. Bollman's statement to nursing supervisor Whitney Tower-Wood, which resulted in Plaintiff no longer being treated by Dr. Bollman.  (Id. at 5.)

On February 2, 2023, while still being treated at the VA Medical Center, Plaintiff gave nurse Tower-Wood a document describing the January 21, 2023 interaction with Dr. Bollman and requested that this grievance be submitted to the "Medical Center's Grievance Department."  (Id. at 6.)  On April 11, 2023, Plaintiff's grievance was denied.  (Id.)

On May 22, 2023, Plaintiff initiated the instant action by filing his first Complaint.  (Doc. No. 1.)  As discussed previously, Plaintiff thereafter filed several Amended Complaints and the

---

[1]   The Court will consider all facts alleged in the Fourth Amended Complaint and Plaintiff's Oppositions to Defendants' Motions to Dismiss the Amended Complaint.  Because Plaintiff is a pro se litigant, he is entitled to deference in his filings and is held "to less stringent standards than formal pleadings by lawyers."  United States v. Bradley, 505 F. App'x 220, 221 n.1 (3d Cir. 2012) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Court ultimately deemed Plaintiff's Fourth Amended Complaint (Doc. No. 20) as the operative Complaint in this case.  In Plaintiff's Fourth Amended Complaint, he alleges claims of negligent infliction of emotional distress and medical malpractice against Defendants Dr. Hillary Bollman and the United States.  (See id. at 8.)  He seeks compensation of $50,000 for his injuries.  (See id.)

On November 20, 2023, Defendants filed a Motion to Dismiss (Doc. No. 43), seeking dismissal of Plaintiff's claims.  They moved under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(b)(5).  (Doc. No. 43.)  They first argue that Plaintiff's Fourth Amended Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  (See id. at 13.) Second, Defendants allege that Plaintiff's Fourth Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (See id. at 21.) Specifically, Defendants argue that there was no negligence by Dr. Bollman and that there was no breach of duty to satisfy a claim for medical malpractice.  (See id. at 21-22.)  Finally, Defendants argue that the Fourth Amended Complaint should be dismissed under Rule 12(b)(5) for insufficient service of process because the parties were never properly served with the Fourth Amended Complaint.  (See id. at 18.)

Plaintiff disagrees.  In his Response in Opposition (Doc. No. 55), he argues that the Court has subject matter jurisdiction under the Federal Tort Claims Act, service was proper, and he has alleged sufficient allegations to overcome the Motion to Dismiss standard.  (See id.)

## III.   STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's Fourth Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5) and 12(b)(6).  Each standard is discussed below.

**A. Federal Rules of Civil Procedure Rule 12(b)(1)**

"When a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should consider the Rule 12(b)(1) challenge first because, if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses become moot and need not be addressed." Wyeth and Cordis Corp. v. Abbot Labs., No. 8-230, 2008 WL 203685, at *2 (D.N.J. May 8, 2008); see also Tagayun v. Stolzenberg, 239 F. App'x. 708, 710 (3d Cir. 2007) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case."); McCurdy v. Esmonde, 2003 WL 223412, at *4 (E.D. Pa. Jan. 30, 2003) ("Without jurisdiction the court cannot proceed at all in any cause.") (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)).

**B. Federal Rules of Civil Procedure Rule 12(b)(6)**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court

in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6)

motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken

into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike

conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and

evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show"

such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at

679.  The "plausibility" determination is a "context-specific task that requires the reviewing court

to draw on its judicial experience and common sense."  Id.

### C.  Federal Rule of Civil Procedure Rule 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural

requirement of service of summons must be satisfied."  Omni Capital Int'l v. Rudolf Wolff & Co.,

Ltd., 484 U.S. 97, 104 (1987).  Under Rule 12(b)(5) of the Federal Rules of Civil Procedure,

"insufficiency of service of process" is one basis for which a defendant may seek dismissal of a

complaint.  Fed. R. Civ. P. 12(b)(5).  A defendant may file a motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(5) when a plaintiff fails to properly serve him or her with the summons and complaint. See id.

In such a motion, "the party asserting the validity of service bears the burden of proof on that issue." Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993). That party must do so by a preponderance of the evidence using affidavits, depositions, and oral testimony. State Farm Mut. Auto. Ins. Co. v. Tz'doko V'Chesed of Klausenberg, 543 F. Supp. 2d 424, 428 (E.D. Pa. 2008) (quoting Villanova v. Solow, No. 97–6684, 1998 WL 643686, at *1 (E.D. Pa. Sept. 18, 1998)).

## IV.   ANALYSIS

In construing Plaintiff's pro se allegations in his Fourth Amended Complaint liberally, the Court discerns that he alleges two state law claims under the Federal Tort Claims Act ("FTCA"). (See Doc. No. 20.)  He alleges one count of negligent infliction of emotional distress under Pennsylvania state law and one count of medical malpractice under Pennsylvania state law.[2] (Id.) In response, Defendants argue that Plaintiff's Fourth Amended Complaint should be dismissed for three reasons.  First, the Fourth Amended Complaint should be dismissed under Federal Rule of

---

[2]  The Court was initially challenged to understand pro se Plaintiff's claims in this case.  However, at the hearing held with parties on the Motion to Dismiss (Doc. No. 99), Plaintiff confirmed that his two claims in this case are negligent infliction of emotional distress and medical malpractice:

> The Court: That's the factual basis.  What's the claim?  Is it—what kind of—
>
> Mr. Richardson: Negligent—negligent infliction of emotional distress and medical malpractice.
>
> The Court: All right, so those are the two claims you're making in 23-2015, right?
>
> Mr. Richardson: Yes.

(Doc. No. 99 at 7:10-16.)

Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction.  Second, the Fourth Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Finally, the Fourth Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.  The Court will address each of these arguments in turn.

### A.  Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

As discussed previously, Defendants first argue that Plaintiff's Fourth Amended Complaint should be dismissed for lack of subject matter jurisdiction. Plaintiff counters that the Court has subject matter jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346.

The FTCA, 28 U.S.C. § 1346, states in pertinent part:

> [T]he district courts. . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  Accordingly, courts recognize that "[t]he FTCA creates a limited waiver of the United States' sovereign immunity for claims that its officers or employees acting within the scope of their employment were negligent."  Muse v. VA Hospital, 2:18-cv-301, 2018 WL 6599470, at *4 (W.D. Pa. Dec. 17, 2018).  To establish a claim under the FTCA, the Third Circuit has held that the FTCA's statutory procedures must be strictly followed.  Livera v. First Nat'l State Bank of N.J., 879 F.2d 1186, 1194 (3d Cir.1989) ("Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed.");  see also United States v. Kubrick, 444 U.S. 111, 117–18 (1979) ("[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended.").

The procedures to bring a claim under the FTCA are found in Chapter 171 of Title 28.  See White-Squire v. U.S. Postal Service, 592 F.3d 453, 457 (3d Cir. 2010).  Specifically, (1) a plaintiff must have first presented the claim to the appropriate Federal agency prior to filing suit in district court, (2) the plaintiff "must demonstrate that a government employee had been acting within the scope of his employment" and (3) the United States must be named as a Defendant.  Id.  (citing 18 U.S.C. §§ 1346(b) and 2675).  Under the second requirement, VA health care employees that are providing health care or treatment are acting within the scope of their employment for purposes of FTCA claims.  See Hall v. AFSCME, Civ. Act. No. 17-3417, 2017 WL 4274877, at *3 (E.D. Pa. Sept. 26, 2017) ("Plaintiff's exclusive remedy for any negligence or intentional torts committed by VA employees in the course of treating him at VA facilities is a claim against the United States under the Federal Tort Claims Act (FTCA).")  Regarding the third prong, "The United States is the only proper defendant in a FTCA action."  Mayfield v. Wahrma, Civ. Act. No. 19-CV-5676, 2021 WL 37721, at *2 (E.D. Pa. Jan. 5, 2021).

Here, Plaintiff has properly alleged subject matter jurisdiction under the FTCA.  First, he presented his claims to the appropriate federal agency when he filed a grievance with the VA hospital on February 2, 2023.  (See Doc. No. 20 at 6.)  Second, Plaintiff alleges that Dr. Bollman was his doctor at a VA hospital when the actions that underlie his claims occurred.  (See id. at 5.)  Finally, Plaintiff named the United States as a Defendant in the case caption of his Fourth Amended Complaint.  (Id. at 4.)  Accordingly, Plaintiff has followed the proper procedures to invoke jurisdiction under the FTCA, thereby giving this Court subject matter jurisdiction over his claims.

However, as discussed above, "[t]he United States is the only proper defendant in a FTCA action."  Mayfield, 2021 WL 37721, at *2.  Accordingly, all claims against individual defendants

10

or agencies must be dismissed.  See id.; Gary v. Pa. Human Relations Comm'n, 497 Fed.Appx.

223, 228 (3d Cir. 2012) ("[T]he FTCA authorizes suits only against the United States itself, not

individual defendants or agencies.").  In this regard, Plaintiff's claims against Defendant Dr.

Hillary Bollman will be dismissed.  But the Court will retain jurisdiction over Plaintiff's claims

against the United States and will continue its analysis only on the sufficiency of the other claims

against the United States.

**B.  Defendant United States' Motion to Dismiss for Failure to State a Claim**

Next, Defendant United States argues that Plaintiff's Fourth Amended Complaint should

be dismissed for failure to state a claim upon which relief can be granted under Rule of Civil

Procedure 12(b)(6).  The Court will evaluate each of Plaintiff's claims under this standard.  Further,

as required by the FTCA, Pennsylvania state law will be applied to Plaintiff's claims.  See

MacDonald v. U.S., 767 F.Supp. 1295, 1298 n. 3 (M.D. Pa. 1991) ("Because this is an action under

the FTCA, the state law that would apply to determine the liability of 'a private individual under

like circumstances' applies to determine the liability of the government.") (citing Rodriguez v.

United States, 823 F.2d 735, 739 (3d Cir.1987)).

1.  Negligent Infliction of Emotional Distress

As discussed above, in Plaintiff's Fourth Amended Complaint, he alleges a state law claim

of negligent infliction of emotional ("NIED") distress.  Defendant submits that Plaintiff fails to set

forth sufficient facts to meet the requirements of a NIED claim.

Under Pennsylvania law, a plaintiff may only prevail on a claim of negligent infliction of

emotional distress if he plausibly pleads any of the following situations: "(1) the defendant had a

contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical

impact; (3) the plaintiff was in a zone of danger and reasonably feared impending physical injury;

or (4) the plaintiff observed a tortious injury to a close relative." Runner v. C.R. Bard, 108 F.

Supp. 3d 261, 272 (E.D. Pa. 2015).

After successfully demonstrating one of the above factual scenarios, a plaintiff must next

establish two additional factors: (1) an emotional disturbance and (2) a physical harm. Id. at 273.

(citing Restatement (Second) of Torts, Section 436A, comment c); Drumheller v. Johnson &

Johnson, Civil Action No. 20-6535, 2021 WL 1853407, at *16 (E.D. Pa. May 10, 2021) (citations

omitted); Bernstein v. Serv. Corp. Int'l, Civil Action No. 17-4960, 2018 WL 6413316, at *5 (E.D.

Pa. Dec. 6, 2018) ("To recover damages for emotional distress under a negligence theory, a

plaintiff must have experienced physical injury . . . Pennsylvania courts have consistently required

plaintiffs to allege physical manifestations of their emotional suffering.") (citations omitted). The

alleged emotional disturbance must reach a certain level of severity. See Runner, 108 F. Supp. 3d

at 273 ("A plaintiff must allege some emotional disturbance beyond 'transitory, nonrecurring

physical phenomena, harmless in themselves' and tantamount to physical harm that 'may be

classified by the courts as illness, notwithstanding their mental character.'") (emphasis in original)

(citations omitted).

Here, in construing Plaintiff's pro se allegations liberally, he argues that he was subjected

to NIED under the first two theories.[3]  The Court will discuss each in turn and then discuss whether

he has sufficiently alleged facts to show that he suffered an emotional disturbance and physical

harm.

---

[3] Given the facts alleged in Plaintiff's Fourth Amended Complaint, he does not allege a viable
claim under (3) the zone of danger or (4) observing a tortious injury to a close relative theories.
(See Doc. No. 20.)  Specifically, he does not allege that he "was in personal danger of physical
impact because of the direction of a negligent force against [him]" nor that he witnessed a
bystander being injured.  Kovalev, 647 F.Supp.3d at 349 (citing Russell, 603 F.Supp.3d at 205).

      i.   <u>Contractual or Fiduciary Duty</u>

As noted above, the first method of proving a NIED claim is showing that the defendant had a contractual or fiduciary duty toward the plaintiff. The requisite contractual or fiduciary duty need not extend to all possible relationships that a plaintiff may have with a defendant. Instead, under Pennsylvania law, the relevant "special" relationship occurs "where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting stress." <u>Bernstein</u>, 2018 WL 6413316, at *5 (citing <u>Toney v. Chester Cnty. Hosp.</u>, 36 A.3d 83, 84 (Pa. 2011)). In other words, the contractual or fiduciary duty involves "an implied duty to care for the plaintiff's emotional wellbeing," a type of duty commonly associated with doctors or funeral directors. <u>Runner</u>, 108 F. Supp. 3d at 272 (citing <u>Toney</u>, 36 A.3d at 92, 95).

Here, Plaintiff submits that as his doctor at a VA hospital, there is a "duty of care to treat the plaintiff with dignity that afforded the plaintiff reasonable protection from emotional harm." (Doc. No. 20 at 5-6.) Courts in Pennsylvania have consistently held that some doctor-patient relationships qualify as "special" relationships to show that a defendant had a contractual or fiduciary duty towards the plaintiff. <u>See Rightmyer v. Philly Pregnancy Center, P.C.</u>, Civ. Act. No. 23-1925, 2024 WL 896571, at *5 (E.D. Pa. March 1, 2024) (citing <u>Toney</u>, 36 A.3d 83 (Pa. 2011)). However, even when a relationship is deemed "special," it does not mean that all comments a doctor makes to a patient that upsets a patient can result in a NIED claim. <u>See Toney</u>, 36 A.3d at 95. Rather, as the Pennsylvania Supreme Court explained in <u>Toney</u>:

> As with other states, we find it prudent to limit the reach of this NIED claim to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach. As explained by these states, the special relationships must encompass an implied duty to care for the plaintiff's emotional well-being. The potential emotional harm must not be the type that a reasonable person is expected to bear. Compensable emotional harm has been

Case 2:23-cv-02015-JHS   Document 101   Filed 08/05/24   Page 14 of 24

described as "likely to be experienced as a visceral and devastating assault on the self" such that it "resemble[s] physical agony in its brutality." Keating, 44 Wake Forest L.Rev. at 1174. We agree with our sister courts that relationships involving life and death fall within this category. It is impossible, and indeed would be irresponsible on our part, to create an exhaustive list of qualifying relationships in this opinion. Rather, we find it prudent to leave the legal question of whether a sufficient duty exists to our trial judges to decide on a case-by-case basis, at some point prior to trial, be it preliminary objections, summary judgment, or the like. Nonetheless, we would hold that some relationships, including some doctor-patient relationships, will involve an implied duty to care for the plaintiff's emotional well-being that, if breached, has the potential to cause emotional distress resulting in physical harm.

Id. Further, the court continued:

In deciding whether imposition of a duty is appropriate, our trial courts should also consider the standard five-factor test we have utilized previously:

The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

Id. at 95, n. 11 (citing Bilt–Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 281 (Pa. 2005)). Accordingly, this Court will apply the five-factor test to the facts at hand. See R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005) ("The existence of a duty is a question of law for the court to decide.").

As to the first factor, Plaintiff avers a doctor-patient relationship between him and Dr. Bollman while he was at the VA hospital. This factor weighs in favor of a duty. However, the final four factors weigh against imposing the duty of care Plaintiff proposes.

"Regarding the third factor [the nature of the risk imposed and the foreseeability of the harm incurred], duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." Manzek, 888 A.2d at 747. Here, in accepting Plaintiff's allegations as true, it would not be foreseeable that threatening to discharge a patient unless they

14

accepted help would cause the injuries that Plaintiff alleges.  Rather, it is reasonable to assume that

a patient would prefer to accept the help offered.  This reasoning also goes hand-in-hand with the

second, fourth and fifth factors—(2) the social utility of a defendant's contact, (4) the

consequences of imposing a duty upon defendant and (5) the overall public interest in the proposed

solution.  Regarding (2), the social utility of a defendant's contact, Doctors must have the ability

to discharge patients for a variety of reasons—including a patient refusing help or refusing to

follow hospital rules.  While patients have a right to disagree with a doctor's recommendation or

dislike a doctor's bedside manner, there are other ways—as was done here—to resolve disputes.

Specifically, in this case, Plaintiff alleges that after his interaction with Dr. Bollman, he

complained to Nursing Supervisor Tower-Wood who "notified the plaintiff's treatment team as

what the plaintiff had related to her regarding [Dr. Bollman's] statement."  (Doc. No. 20 at 5.)  As

a result, Dr. Bollman "was removed from treating the plaintiff."  (Id.)

Next, in analyzing (4), the consequences of imposing a duty upon defendant, Plaintiff's

NIED claim would impose a duty on doctors to not discharge patients if a potential discharge could

upset a patient.  This is precisely the duty the Pennsylvania Supreme Court cautioned against in

Toney when it held that NIED claims against doctors should be "based on the circumstances."  614

Pa. at 114.  Specifically, the court held that while a doctor's actions may upset a patient, it does

not always rise to the level of a NIED claim:

> Doctors clearly have a preexisting duty to their patients as evidenced in the volumes
> of malpractice cases that rest on the concept of the physician's duty of care.
> Additionally, doctors inevitably but necessarily inflict emotional pain on their
> patients when they disclose distressing news about the patient's health. Obviously,
> however, physicians should not be liable for the emotional distress when they are
> obligated to share distressing news.

Id. at 113.  Accordingly, the court in Toney held that NIED claims against doctors must be

analyzed on a "case-by-case basis" but with a high threshold—typically only applying to

"relationships involving life and death."[4] Id. at 117. The court further recognized that "[a]lthough some level of emotion attends every situation involving one's health, we do not anticipate that every area of healthcare will carry the deeply emotional responses sufficient to sustain this exception." Id. at 116 (quoting Larsen v. Banner Health Sys., 81 P.3d 196, 206 (Wyo. 2003)).

Finally, (5) the overall public interest in the proposed solution, weighs against applying NIED to Plaintiff's claims. Here, there is no public interest in allowing a NIED claim against a doctor who threatened to discharge a patient in these circumstances to go forward. As discussed above, the hospital appropriately reacted to the situation and removed Plaintiff as a patient from Dr. Bollman.

Accordingly, in analyzing the five factors outlined by the Pennsylvania Supreme Court, all but one of the factors weigh against imposing a duty against Dr. Bollman. Without finding a breach of a duty by Dr. Bollman, Plaintiff cannot state a claim for NIED under the contractual or fiduciary duty requirement.

ii. <u>Physical Impact</u>

The next method of establishing negligent infliction of emotional distress is a physical impact claim. To bring a physical impact claim, a plaintiff can only bring a cause of action for negligent infliction of emotional distress when "a plaintiff sustains bodily injuries . . . which are accompanied by . . . mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff . . . ." Brown v. Philadelphia Coll. of Osteopathic Med., 674 A.2d

---

[4] For example, in <u>Toney</u>, the court found that NIED applied to the "very sensitive and emotionally charged field of obstetrics" when "Defendants' negligent misrepresentation of [a] March 2003 ultrasound prevented her from preparing herself for the shock of witnessing her son's birth with [] substantial physical deformities." Id. at 101. "The abnormalities include[d] the absence of all four extremities below the elbow or knee joint, hypoglossia (short, incompletely developed tongue), micrognathia (abnormally small lower jaw), ventral curvature of the penis, and umbilical hernia." Id. at n. 2.

1130, 1135–36 (1996).  In sum, some physical injury or contact must occur contemporaneously or shortly before a plaintiff claims the emotional distress began.  See id.  While the bar for what constitutes a physical injury is relatively low, there still must be "an objective, measurable and observable physical injury."  Shumosky v. Lutheran Welfare Servs. of Northeastern Pa., 784 A.2d 196, 201 (Pa. Super. 2001).  For example, in Shumosky, the plaintiff could recover for the mental suffering of fear of AIDS when the physical injury was a needle-stick.  Id.; see e.g., Brown, 674 A.2d at 1132, 1136 (physical impact occurred when woman suffered a miscarriage as a result of appellant's failure to attend to her); Botek v. Mine Safety Appliance Corp., 611 A.2d 1174, 1175, 1177 (Pa. 1992) (physical impact occurred when the plaintiff used a gas mask filled with carbon monoxide rather than oxygen resulting in later emotional injury); Stoddard v. Davidson, 513 A.2d 419, 422 (Pa. Super. 1986) (holding that the jostling and jarring of an automobile's occupants while it drove over a corpse was held to be sufficient physical impact); Kovalev, 647 F.Supp.3d at 348 (holding that the physical impact was "ingest[ing] the allegedly moldy bread and subsequently bec[oming] ill.")

Here, unlike the cases listed above, Plaintiff does not allege any physical impact.  Rather, he alleges that Dr. Bollman's statement caused him an emotional and physical reaction.  Accordingly, without a physical impact predicating Plaintiff's physical and emotional distress, he cannot state a claim for NIED under the physical impact theory.  Accordingly, Defendants' Motion to Dismiss will be granted on Plaintiff's NIED claims.

2.  Medical Malpractice

Next, Plaintiff brings a claim for state law medical malpractice against Defendants.  Defendants argue that Plaintiff fails to state a claim for medical malpractice under Pennsylvania law.  (Doc. No. 43 at 22.)

17

To prove a medical malpractice claim under Pennsylvania law, a plaintiff must establish four elements:

> (1) a duty owed to the patient by the physician; (2) the physician's breach of that duty; (3) that the breach was the proximate cause of the patient's injury, or alternatively, a substantial factor in bringing about the patient's injury; and (4) damages suffered by the patient directly resulting from that harm.

Booker v. United States, Civ. Act. No. 15-5070, 2018 WL 3475463, at *5 (E.D. Pa. July 19, 2018) (citing Mitzelfelt v. Kamrin, 584 A.2d 888, 891 (Pa. 1990)).  Under the first element, a court must determine whether the duty owed to the patient is based on "an acceptable professional standard" or based on "an ordinary negligence theory."  See Doe v. Hospital of University of Penn., 546 F.Supp.3d 336, 343-44 (E.D. Pa. 2021).  Put simply, if a plaintiff's complaint alleges only ordinary negligence, a doctor's duty of care will be viewed by that of an ordinary person in a negligence analysis.  The Pennsylvania Superior Court has repeatedly explained the distinctions between the two types of claims and the two-part test to determine whether a claim sounds in medical malpractice:

> A medical malpractice claim is distinguished by two defining characteristics.  First, medical malpractice can occur only within the course of a professional relationship.  Second, claims of medical malpractice necessarily raise questions involving medical judgment.  Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the [fact-finder].  Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the . . . requirements that govern medical malpractice actions.

Grossman v. Barke, 868 A.2d 561, 570 (Pa. Super. 2005).  Regarding the second prong, courts in Pennsylvania have found that "not all negligence claims involving hospitals or the health care system sound in medical malpractice."  Rather, it depends on the facts of the case.  Hospital of

University of Penn., 546 F.Supp.3d at 346.  For example, in <u>Smith v. Friends Hospital</u>, the

Pennsylvania Superior Court found that the plaintiff's complaint against a hospital and hospital

employees was an ordinary negligence claim rather than a professional negligence claim based on

the facts of the case.  <u>See</u> 928 A.2d 1072, 1075 (Sup. Ct. Pa. 2007).  Specifically, the court held

that:

> [The plaintiff's] cause of action is based only on her allegations that while
> hospitalized, she was sexually assaulted and beaten.  [The plaintiff's] allegations
> against the Hospital center only around claims that the Hospital failed to properly
> employ and supervise the individual [defendants], who allegedly perpetrated the
> sexual and physical assaults on [the plaintiff], and that the Hospital failed to create
> an environment where such acts could not occur . . . Thus, although [the plaintiff's]
> claims pertain to an action that occurred within the course of a professional
> relationship, they clearly do not raise questions involving medical judgment beyond
> the realm of common knowledge and experience.

<u>Id.</u> at 1076.

Here, Plaintiff satisfies the first part of the two-part test because Plaintiff's interaction with

Dr. Bollman occurred at a VA hospital when she was treating Plaintiff.  However, it fails on the

second prong because Plaintiff's claim, like the claims in <u>Smith</u>, does not raise questions of

medical judgment beyond the realm of common knowledge and expertise.  Rather, Plaintiff's claim

only surrounds the alleged statement made by Dr. Bollman that "if the plaintiff did not accept the

help that defendant was offering, the defendant would discharge the plaintiff to the streets and let

the plaintiff fend for himself."  (Doc. No. 20 at 5.)  In viewing the facts as alleged by Plaintiff, no

part of this interaction goes to Dr. Bollman's medical judgment beyond the realm of common

knowledge and experience.  Rather, like the plaintiff in <u>Smith</u>, a professional negligence claim

cannot be raised when the facts of the case relate to another cause of action and not to a doctor's

medical judgment.

Accordingly, in construing pro se Plaintiff's allegation liberally, this claim will be construed as an ordinary negligence claim.  Regardless, in Pennsylvania, "in a negligence action, ordinary or professional, the elements are identical: the plaintiff must establish the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages."  Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009); see also Wittrien v. Burkholder, 965 A.2d 1229, 1232 ("In any negligence case, the plaintiff must prove duty, breach causation and damages.").

But, under either standard, Plaintiff is unable to establish the elements to support a claim of medical malpractice or negligence under Pennsylvania law.  Specifically, he is unable to show that Dr. Bollman breached a duty of care when she told Plaintiff that "if the Plaintiff did not accept the help that the defendant was offering, the defendant would discharge the plaintiff to the streets and let the plaintiff fend for himself."  (Doc. No. 20 at 5.)  As discussed previously, "[t]he existence of a duty is a question of law for the court to decide" by evaluating the five factors prescribed by the Pennsylvania Supreme Court.  Manzek, 888 A.2d at 746.  Here, the Court has previously discussed those five factors when analyzing Plaintiff's NIED claims against Dr. Bollman and found that the majority weigh in favor of not imposing a duty.  See Section IV(B)(i), supra. Because the Court finds that Dr. Bollman did not breach her duty during her interaction with Plaintiff, Defendant's Motion to Dismiss will be granted on Plaintiff's medical malpractice claim. Accordingly, because the Court will dismiss both of Plaintiff's claims in this case, the Fourth Amended Complaint will be dismissed.  However, because both claims are being dismissed, the Court must consider Defendants' final argument—whether the Fourth Amended Complaint should be dismissed with or without prejudice.

20

3. Leave to Amend

As discussed above, Defendants final argument is that Plaintiff's Fourth Amended Complaint should be dismissed with prejudice because granting leave to amend would be futile. (Doc. No. 43 at 10.)  Defendants argue that futility is present here because, despite the fact that "Richardson has repeatedly amended his complaint, [] the basic factual predicate has never changed."  (Id. at 17, n. 14.)

The Third Circuit has held that "in the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend [his] complaint."  Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)).  Futility is especially relevant when a plaintiff "has already been granted leave to amend once and failed to correct the deficiencies in his initial complaint."  Floyd v. Attorney General of Pa., 722 Fed.Appx. 112, 115 n.2 (3d Cir. 2018).

Here, Plaintiff has amended his Complaint four times.  (See Doc. Nos. 4, 9, 10 and 20.)  As discussed above, the Court previously granted Plaintiff leave to Amend his Complaint when it deemed the Fourth Amended Complaint Plaintiff's operative Complaint in this action.  Notably, the factual allegations in both the initial Complaint and the Fourth Amended Complaint are nearly identical.[5]  (See Doc. Nos. 1, 20.)  Accordingly, because Plaintiff has already been granted leave

---

[5] In Plaintiff's initial complaint (Doc. No. 1), he alleges that Dr. Bollman told Plaintiff that "if [he] did not accept the help she was offering, she would discharge me to the streets and let me fend for myself!"  (Id. at 3.)  He also argues that "[a]s a result of said 'THREAT,' I suffered shock, anxiety, depression, loss of sleep and tightening of the muscles in my neck, back and

to amend once and failed to correct the deficiencies in his initial Complaint, granting leave to amend again would be futile.[6]

Nonetheless, the Court will still discuss Defendant's final argument—that Plaintiff's service of the Fourth Amended Complaint was insufficient.

### C. Defendants' Motion to Dismiss for Insufficient Service of Process

Finally, Defendant moves to Dismiss Plaintiff's Fourth Amended Complaint on the grounds that this Court lacks jurisdiction over Defendant based upon insufficient service of process. (Doc. No. 43 at 18-19.)   Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a party may move to dismiss for insufficient service of process.  The burden is on the party serving process to show that service was valid.  Grand Ent. Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993).   Service of process of the United States as a party is governed by Rule 4(i) of the Federal Rules of Civil Procedure.  Rule 4(i) states:

(i) Serving the United States and Its Agencies, Corporations, Officers, or Employees.

(1) United States. To serve the United States, a party must:

(A)

(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

---

stomach, along with nightmares." (Id.) (emphasis in original).  These factual allegations are identical to the factual allegations alleged in Plaintiff's Fourth Amended Complaint. (See Doc. No. 20.)

[6] Further, granting leave to amend would be futile for the additional reason that, as discussed infra, Plaintiff has failed to allege duty and breach of duty by Dr. Bollman.  Plaintiff would not be able to allege additional facts to overcome this finding.

> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
>
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i).

Here, Defendant argues that while the United States accepted the service of Plaintiff's first Complaint (Doc. No. 8), it was not properly served any subsequent Amended Complaints, including Plaintiff's Fourth Amended Complaint. (Doc. No. 43 at 20.) Defendant further argues that while Defendant attached certified mail receipts to his Fourth Amended Complaint showing that something was mailed to the United States Attorney's Office, the Attorney General of the United States at Washington, D.C., and the Office of the Attorney General of Pennsylvania, it is unclear what was mailed. (See id. at 19.) Defendant further alleges that because the certified mail receipts predate the filing of the Fourth Amended Complaint, it is unlikely that the Fourth Amended Complaint was properly served. (See id.)

Plaintiff does not appear to contest this point. Rather, he admits that "plaintiff was left with the impression that where defendant accepted service of plaintiff's complaint, there was no Rule 12(B)(5) issue." (Doc. No. 98 at 1.) Accordingly, Plaintiff has not carried his burden to show that service of his Fourth Amended Complaint was validly accomplished.

Next, under Rule 12(b)(5), once the court has established that service was insufficient, the Court has "broad discretion" in deciding whether to dismiss the complaint. See Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992). The Third Circuit has instructed that "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." Id. However, as discussed infra, the Court has concluded that Plaintiff's claims in the

23

Fourth Amended Complaint will be dismissed with prejudice for failure to state a claim, and an amendment to those claims would be futile.  Accordingly, because Plaintiff's Fourth Amended Complaint will be dismissed on those grounds, there is no good cause for the Court to grant Plaintiff additional time to properly serve his Fourth Amended Complaint on Defendants.

**V.    CONCLUSION**

For the reasons discussed above, Defendants Motion to Dismiss (Doc. No. 43) will be granted and Plaintiff's Fourth Amended Complaint will be dismissed with prejudice.   An appropriate Order follows.